#24895-a-JKM

**2009 SD 34**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KELLY B. MCCOLLAM and
MICHELLE M. MCCOLLAM,                     Plaintiffs and Appellants,

    v.

NEIL D. CAHILL,                                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SCOTT P. MYREN
Judge

* * * *

JOHN W. BURKE of
Thomas, Braun, Bernard & Burke, LLP          Attorneys for plaintiffs
Rapid City, South Dakota                              and appellants.

MELISSA E. NEVILLE
KENNITH L. GOSCH of
Bantz, Gosch & Cremer, LLC                        Attorneys for defendant
Aberdeen, South Dakota                               and appellee.

* * * *

ARGUED ON MARCH 24, 2009

OPINION FILED **05/13/09**

#24895

MEIERHENRY, Justice

[¶1.]       Kelly and Michelle McCollam entered into a contract for deed with Neil Cahill to purchase Cahill's property on the outskirts of Mobridge, South Dakota. McCollams sued Cahill for equitable rescission based on Cahill's failure to disclose the presence of snakes in and around the house. Cahill counter-sued for specific performance of the contract for deed. The trial court granted Cahill's request for specific performance. McCollams appeal.

[¶2.]       McCollams contend that rescission should have been granted based on fraud or failure of consideration.[1] McCollams claim that Cahill had a duty to disclose a "snake problem" on the property condition disclosure statement required by SDCL 43-4-44. They claimed that had they known of the "snake problem," they would not have purchased the property.

[¶3.]       SDCL 43-4-38 requires a seller of residential real property to disclose certain property conditions prior to sale. The disclosure form is set forth by statute and contains over 90 questions concerning the lot or title, structural information, system/utilities information, hazardous conditions, and miscellaneous information. SDCL 43-4-44. At the time of the sale, the disclosure form included the following question under the miscellaneous information section of the form: "Are there any

---

1.    While Cahill addresses mistake, fraud, and failure of consideration in his brief, McCollams do not address mistake as grounds for rescission.

other problems that have not been disclosed above?"[2]  *Id.*  The seller is required to "make each disclosure in good faith."  SDCL 43-4-41.

[¶4.]      In applying the statutes, we have previously said, "'[t]he statutes require a *complete and truthful* disclosure made in good faith, not a disclosure simply sufficient to put the buyer on notice of the defects.'"  Fuller v. Croston, 2006 SD 110, ¶18, 725 NW2d 600, 606-07 (quoting Parmely v. Hildebrand (Parmely I), 1999 SD 157, ¶9, 603 NW2d 713, 717 (emphasis in original)).  "One obvious purpose of the disclosure statutes is 'to provide prospective buyers with information about material defects known to the seller concerning the property.'"  *Id.* ¶23 (quoting Coughlin v. Gustafson, 772 NE2d 864, 869 (Ill 2002)).  Proper disclosure requires the "'full and complete disclosure of defects of which the seller is aware.'"  Parmely v. Hildebrand (Parmely II), 2001 SD 83, ¶9, 630 NW2d 509, 513 (emphasis removed) (quoting Engelhart v. Kramer, 1997 SD 124, ¶20, 570 NW2d 550, 554).  The seller's good faith in truthful and complete disclosure is judged using the reasonable person standard.  *See* SDCL 43-4-41; SDCL 43-4-44; *Fuller*, 2006 SD 110, ¶18, 725 NW2d at 607 (citing *Engelhart,* 1997 SD 124, ¶20, 570 NW2d at 555).

[¶5.]      McCollams contend that Cahill was required to disclose that there had been snakes in the house and around the property.  Consequently, McCollams had the burden of proving that a material problem with snakes existed on the property prior to sale, that Cahill was aware of the problem, and that he had failed to disclose it.  The trial court concluded that McCollams had failed to prove that there

---

2.      This question was revised by the legislature in 2005 to read:  "Are you aware of any other material facts or problems that have not been disclosed on this form?"  *See* SDCL 43-4-44.

was a "snake problem." The court denied McCollams' request for rescission and granted Cahill's request for specific performance. McCollams raise two issues on appeal.

## ISSUES

1. Whether the trial court erred by denying rescission of the contract for deed.

2. Whether the trial court erred by granting specific performance of the contract for deed.

## STANDARD OF REVIEW

[¶6.] We review the circuit court's findings of fact under the clearly erroneous standard. *In re Estate of Smid*, 2008 SD 82, ¶11, 756 NW2d 1, 5-6 (quoting Smetana v. Smetana, 2007 SD 5, ¶7, 726 NW2d 887, 891). The findings of fact will not be reversed absent "a firm conviction that a mistake has been made." *Id.* We review conclusions of law de novo. *Id.* "'The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the [circuit] court and we give due regard to the [circuit] court's opportunity to observe the witnesses and the evidence.'" *In re Estate of Pringle*, 2008 SD 38, ¶18, 751 NW2d 277, 284 (quoting *In re Estate of Dokken*, 2000 SD 9, ¶10, 604 NW2d 487, 490-91). "'We review a circuit court's decision regarding an equitable remedy under the abuse of discretion standard.'" Vander Heide v. Boke Ranch, Inc., 2007 SD 69, ¶17, 736 NW2d 824, 832 (quoting Ziegler Furniture and Funeral Home, Inc. v. Cicmanec, 2006 SD 6, ¶14, 709 NW2d 350, 354).

## ANALYSIS

[¶7.]     Whether the appropriate remedy is rescission or specific performance in this case depends on the trial court's rulings as to the underlying facts.  Here, the trial court determined that no "snake problem" existed on the property.  Unless the court's determination is clearly erroneous, Cahill had no duty under the statute to disclose, and McCollams' claims of fraud and lack of consideration fail.  At trial, both parties presented numerous witnesses who testified to the presence or absence of snakes on the Cahill property.  McCollams testified that they found two bull snakes in the house within the first weeks after moving into the house.  They also testified to several other bull snakes found in the garage and around the house during the following months.  They testified that encountering the numerous snakes in and around the house frightened their children and eventually caused them to purchase and move into another house.  To prove that there was a snake problem known to Cahill, they presented several witnesses who testified to seeing snakes on the property when Cahill lived there.

[¶8.]     On the other hand, Cahill presented testimony from multiple witnesses that few, if any, snakes were seen on the property while Cahill owned it.  After receiving evidence from both parties, the court determined that during the thirty plus years that Cahill owned the property, Cahill only discovered one snake in the house.  The court also determined that McCollams only saw two snakes in the house and that some snakes were seen in the yard in 2006.  McCollams claim that the court's finding that "[t]he evidence does not establish that the number of snakes

on the Cahill property was 'significant' or 'inordinate' in relation to any other property in the vicinity" is clearly erroneous.

[¶9.] Here, the trial court was confronted with conflicting testimony. Cahill could only remember having one snake in his house.[3] Other witnesses for Cahill testified that they regularly entered the house and basement to retrieve files or clean and had not seen snakes in Cahill's house. One witness who claimed to have seen numerous snakes in Cahill's basement several years prior to the sale was discredited by the court. Other witnesses testified to seeing some snakes, usually dead, on the road next to the property. Other witnesses claimed they had never seen a snake on Cahill's property. Kelly McCollam admitted that he visited the property several times prior to closing and had not seen a snake. One witness testified that she observed that McCollams had left a patio door open through which a snake could have entered the house. With conflicting testimony from numerous witnesses, we defer to the trial court to weigh the evidence and judge the credibility of the witnesses. *See In re Estate of Pringle*, 2008 SD 38, ¶18, 751 NW2d at 284 (quoting *In re Estate of Dokken*, 2000 SD 9, ¶10, 604 NW2d at 490-91). Based on all the testimony, the trial court determined Cahill saw few snakes on the property over the course of thirty years and only one snake inside the house. McCollams are unable to show that the trial court's findings are clearly erroneous.

---

3. McCollams claim that some of the trial court's findings are clearly erroneous as to whether Cahill had told two of the witnesses about finding a snake in the house. Even if the findings were erroneous, McCollams have shown no prejudice because the court determined based on Cahill's own testimony that he had found a snake in the house.

[¶10.]     The court concluded that "the presence of one bull snake in one's house on a single occasion over [thirty] years of occupancy is not the type of disclosure required by the disclosure statutes or otherwise." Reviewing the trial court's findings, the court did not err in drawing this conclusion. McCollams had to prove that a snake problem existed prior to the sale and if so, that Cahill was aware of it and failed to disclose it. Their evidence did not persuade the trial court. Under our standard of review, we must be firmly convinced that a mistake has been made. We are not so persuaded.

[¶11.]     McCollams claim that the trial court erred in granting specific performance and denying rescission of the contract for deed. Both of these claims are based on Cahill's failure to disclose the snake problem. According to SDCL 53-11-2, a contract may be rescinded only under certain circumstances:

> (1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, *fraud*, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;
> (2) If through fault of the party as to whom he rescinds, the *consideration for his obligation fails* in whole or in part;

SDCL 53-11-2 (emphasis added); *see also* SDCL 21-12-1.

[¶12.]     Since the court found that the "snake problem" was not a defect requiring disclosure, it likewise does not constitute fraud or lack of consideration. Consequently, McCollams' request for rescission based on fraud or lack of consideration also fails. Cahill delivered the property to the McCollams as contracted. Therefore, the trial court did not err in refusing to grant rescission of the contract for deed. The contract for deed is enforceable.

[¶13.] Alternatively, McCollams argue that specific performance is not an appropriate remedy for breach of the contract and that the circuit court abused its discretion when it granted specific performance. Relying on SDCL 21-9-3, McCollams claim that specific performance is not appropriate because Cahill did not provide "adequate consideration" and/or because Cahill obtained McCollams' assent "by misrepresentation, concealment, circumvention, or unfair practice." *Id.* The statute provides that specific performance is not appropriate in the following situations:

> (1) If he has not received an *adequate consideration* for the contract;
> (2) If it is not, as to him, just and reasonable;
> (3) If his *assent was obtained by misrepresentation, concealment, circumvention, or unfair practice of any party*, to whom performance would become due under the contract, or by any promise of such party which has not been substantially fulfilled;
> (4) If his assent was given under the influence of mistake, misapprehension, or surprise, except that where the contract provides for compensation in case of mistake, a mistake within the scope of such provision may be compensated for, and the contract specifically enforced in other respects, if proper to be so enforced.

SDCL 21-9-3 (emphasis added). McCollams also assert that the equitable remedy of specific performance is not appropriate because Cahill did not come with "clean hands." *See* Talley v. Talley, 1997 SD 88, ¶29, 566 NW2d 846, 852 (citing Shedd v. Lamb, 1996 SD 117, ¶26, 553 NW2d 241, 245 ) ("A party seeking equity in the court must do equity, including entering the court with clean hands."). "'A [person] who does not come into equity with clean hands is not entitled to any relief herein, but should be left in the position in which the court finds him.'" *Id.* (quoting Kane v. Schnitzler*, 376 NW2d 337, 341 (SD 1985)).

[¶14.]     As with McCollams' claim for rescission, their claim against specific performance relies on their allegation of a snake problem that Cahill had a duty to disclose. The trial court's ruling that the situation did not require Cahill to disclose a snake problem allowed the court to consider specific performance as a remedy. It also obviated McCollams' claim that Cahill had "unclean hands."

[¶15.]     Specific performance is an equitable remedy, and "[a]n essential element to equitable relief is the lack of an adequate remedy at law." Rindal v. Sohler, 2003 SD 24, ¶12, 658 NW2d 769, 772 (citations omitted). "The presumed remedy for the breach of an agreement to transfer real property is specific performance." Wiggins v. Shewmake, 374 NW2d 111, 115 (SD 1985) (citing SDCL 21-9-9). The trial court granted specific performance partially because of the evidence of damage and deterioration to the property while in McCollams' possession. The court also found that McCollams had created a perception in the community that the property had a "snake problem." The court determined that this irrevocable perception substantially affected the marketability of the house. Because the court was not able to quantify damages, Cahill lacked an adequate remedy at law. The trial court did not abuse its discretion in awarding Cahill specific performance.

[¶16.]     We affirm.

[¶17.]     GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and SABERS, Retired Justice, concur.