2001 SD 120

**John A. KNIGHT and Maria Carmen Knight, Plaintiffs and Appellants,**

v.

**Stanley I. MADISON and Marilynn Madison, individually and in their capacities as co-trustees of the U/D/T dated May 3, 1991, Defendants and Appellees.**

No. 21829.

Supreme Court of South Dakota.

Considered on Briefs Aug. 28, 2001.

Decided Sept. 26, 2001.

James F. Margadant of Sieler & Margadant, Rapid City, South Dakota, Attorneys for plaintiffs and appellants.

Ronald W. Banks of Banks, Johnson, Colbath & Kerr, Rapid City, South Dakota, Attorneys for defendants and appellees.

GILBERTSON, Justice

[¶ 1.] John and Maria Knight (Knight) own property served by an easement over and upon the property of Stanley and Marilynn Madison (Madison). Knight sought a judicial determination that he had an exclusive right to use the easement. The circuit court dismissed the claim. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] Knight built a home on realty designated by a plat as lot 14. The only access from lot 14 to a public road known as the South Canyon Road is by use of the .78 acre strip. This strip was referred to as a "road" and "lane" on the plats. The plats contain no language that indicates the "road" or "lane" was to be dedicated to the public use or that the public was granted some type of access to it. Knight built a driveway over the strip and has maintained the driveway at his own expense. Madison owns this private road along with other property adjoining it.[1] Although

---

1. The relevant chain of title is as follows: In 1928, James Russell Madison, Jr. (James) purchased approximately 870 acres of land in Pennington County, South Dakota. This parcel encompasses the properties of Knight and Madison. In 1931, James platted lot 1 on the property. Later that year, lot 1 was sold to Jessie Moses. Jessie eventually transferred lot 1 to Frank Moses and Evelyn Moses. James further subdivided his property in 1937 when he platted lots 3 through 14. Lot 14 was located between lot 1 and the South Canyon Road, which is the only road servicing the lots. To provide access to lot 14 and other land-locked lots, James included a strip of land separating lots 1 and 14 from lots 3, 10–13. That same year, James conveyed lot 14 to Frank Moses. Frank transferred the property to himself and his wife, Margaret, as joint tenants. Lot 14 later passed to Margaret upon Frank's death. James revised the plat in 1951, replacing lots 6 through 13 with lots 5 and 6, but leaving the .78 acre strip intact. In 1975, Knight purchased lots 1 and 14 from Margaret Moses. It is unclear from the record how Margaret received title to lot 1, which was originally owned by Frank and Evelyn. In any event, the parties do not dispute that Knight is the proper owner of lot

Madison has never interfered with, nor has he disputed, Knight's right to use the easement for access to lot 14, Knight brought this declaratory judgment action against Madison in 1997, seeking to establish the parties' rights in the .78 acre strip. Knight claimed his right to use the strip for ingress and egress, under an implied easement, was exclusive as to all parties other than Madison and his invitees. At one point, Knight attempted to enforce his claim of control by erecting a gate to keep out those he did not want to use the road. On motion for summary judgment, the circuit court dismissed Knight's claim, concluding that his right to use the .78 acre strip did "not include the right to limit, restrict, or define the rights of [Madison] or others to use the roadway for all reasonable purposes consonant with the limited grant implied by the recorded plats and grants." Knight appeals the dismissal of his claim.

## STANDARD OF REVIEW

[¶ 3.] The parties submitted this case to the circuit court on stipulated facts. Therefore, on review of a motion granting summary judgment, we need only determine whether the circuit court correctly applied the law. *Westfield Ins. Co., Inc. v. Rowe*, 2001 SD 87, ¶ 4, 631 N.W.2d 175, 176.

## ANALYSIS AND DECISION

[¶ 4.] The parties agree that Knight has an implied easement over the .78 acre strip, arising from the plats filed by James. An easement is "an interest in the land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists." *Gilbert v. KTI, Inc.*, 765 S.W.2d 289, 293 (Mo.App.1988) (citations omitted).

[¶ 5.] The first question is whether the easement is public or private. An easement may be dedicated to public use if the owner clearly acts to dedicate the easement and the public entity accepts the dedication. *Tinaglia v. Ittzes*, 257 N.W.2d 724, 728–29 (S.D.1977) (citations omitted). Neither Madison nor any previous owner has expressly or impliedly dedicated the easement to public use. Beyond that, no public entity accepted the easement. Therefore, the easement remains private.

[¶ 6.] The second question is whether Knight, pursuant to the authority of his easement, has the right to exercise control over access to the road beyond his personal right of ingress and egress to his property. SDCL 43–13–5 provides "[t]he extent of a servitude is determined by the terms of the grant, or the nature of the enjoyment by which it was acquired." Under this statute, neither the physical size nor the purpose or use to which an easement may be put can be expanded or enlarged beyond the terms of the grant of the easement. *See Townsend v. Yankton Super 8 Motel*, 371 N.W.2d 162, 165–66 (S.D.1985). As the holder of a private easement, Knight has the right to limited use or enjoyment of the property "that is not inconsistent with the general use of the property by the owner." *Abbott v. Nampa School Dist. No. 131*, 119 Idaho 544, 808 P.2d 1289, 1293 (1991). This rule of law applies whether Knight obtained his easement by a specific written grant, plat or in any other manner.

[¶ 7.] Knight claims his right to use the property includes the right to exclude all users other than Madison, "[his] agents, employees, and invitees." No persuasive legal authority is provided for this

---

1. Title to the .78 acre strip ultimately passed to Madison from James.

theory and it contradicts general easement law. Unless the owner of the servient estate expressly agrees otherwise, the owner reserves the right to use the property in any manner or for any purpose, so long as the owner does not interfere with the use or enjoyment of the easement. In this case, that use or enjoyment is ingress and egress to lot 14 by Knight. *See Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1234 (Colo.1998); *Coomer v. Chicago and N.W. Transp. Co.*, 91 Ill. App.3d 17, 46 Ill.Dec. 812, 414 N.E.2d 865, 871 (1980); *City of Los Angeles v. Ingersoll–Rand Co.*, 57 Cal.App.3d 889, 129 Cal. Rptr. 485, 488 (1976); *Nicholls v. Healy*, 37 Mich.App. 348, 194 N.W.2d 727, 728 (1971).

[¶ 8.] The fee owner of a road has the right to erect a gate to limit public or third-party access to the road, as long as this does not interfere with the ingress and egress rights of the easement holder.[2] Conversely, an easement holder does not have the authority per his easement to determine who shall be allowed access to the road and who shall not. SDCL 43–2–1 provides "the ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." Thus, the authority to determine who shall be allowed access rests with Madison. Moreover, because the easement exists solely for the purpose of ingress and egress to his lot, that is the limit of Knight's right to any access of what is designated on the plats as the "road" or "path." The owner's reserved rights include allowing others to use the right of way or granting additional easements over the property, so long as the additional uses do not interfere with Knight's easement. *See Robert Jackson Real Estate Co., Inc. v. James*, 755 S.W.2d 343, 346 (Mo.App. 1988); *Deery v. Foster*, 15 Mass.App.Ct. 564, 447 N.E.2d 1251, 1254 (1983); *Associates of Philipsburg v. Hurwitz*, 292 Pa.Super. 406, 437 A.2d 447, 451 (1981).

[¶ 9.] Knight has not argued, nor does it appear from the record before us, that Madison has in any way interfered with Knight's use or enjoyment of the easement. The record clearly supports the trial court's view of the undisputed evidence on this point.

[¶ 10.] This case appears to be a preemptive action to prohibit Madison from granting additional easements or allowing the public to use the right of way. As discussed above, Knight, as holder of an easement, does not have the right to control or interfere with access to the road.[3] As such, the action was properly dismissed.

[¶ 11.] Judgment is affirmed.

[¶ 12.] SABERS, Acting Chief Justice, and AMUNDSON and KONENKAMP, Justices, concur.

[¶ 13.] MILLER, Retired Chief Justice, having been a member of the Court at the time this action was submitted to the Court, did not participate.

---

2. As part of its ruling, the trial court ordered removal of the gate as Madison had not consented to its construction.

3. Herein the plat created an easement in favor of Knight but did not define its terms. Thus, we rely on the general law of easements to determine its terms. We express no opinion on those written easements where the specific rights and obligations of the parties are completely set forth in the document. In those instances such rights and obligations are created and defined by the agreement itself.